[Cite as *State v. Kosla*, 2014-Ohio-1381.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 13AP-514 |
| | | No. 13AP-517 |
| v. | : | (C.P.C. No. 12CR-07-3526) |
| Dana Kosla, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 13AP-515 |
| | | No. 13AP-516 |
| v. | : | (C.P.C. No. 12CR-07-3525) |
| Alexander Edds, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

# D E C I S I O N

## Rendered on March 31, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant.

*Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellee Dana Kosla.

*Roger M. Koeck*, for appellee Alexander Edds.

APPEALS from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} The State of Ohio is appealing from the trial court's granting of a motion to suppress. The State assigns four errors for our consideration:

[I.] THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS WHEN THERE WAS A SUBSTANTIAL BASIS FOR THE ISSUANCE OF THE SEARCH WARRANT.

[II.] THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS WHEN THE SEARCH SHOULD HAVE BEEN UPHELD UNDER THE GOOD-FAITH EXCEPTION.

[III.] THE TRIAL COURT ERRED IN RELYING ON THE OHIO CONSTITUTION TO GRANT THE MOTION TO SUPPRESS, SINCE THE OHIO SUPREME COURT HELD IN *STATE V. LINDWAY*, 131 Ohio St. 166, 2 N.E.2d 490 (1936), THAT THERE IS NO EXCLUSIONARY RULE FOR VIOLATING ARTICLE I, SECTION 14, OF THE OHIO CONSTITUTION.

[IV.] THE TRIAL COURT ERRED IN DISMISSING THE CASE FOR FAILURE TO PROSECUTE WHEN THE COURT HAD SUPPRESSED THE EVIDENCE AND THE PROSECUTION HAD TIMELY FILED A NOTICE OF APPEAL REGARDING THE ORDER OF SUPPRESSION.

{¶ 2}  The foremost limitations on the power of law enforcement officials to conduct searches and seizures is the Fourth Amendment to the United States Constitution.  The Fourth Amendment reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶ 3}  The first problem with the search warrant issued in this case is its lack of specificity.  The officer who swore out the affidavit to obtain a search warrant indicated that controlled substances were being kept in "a certain building or room or vehicle known as the residence of Alexander Edds."

{¶ 4}  Later, the affidavit focuses on 4142 Greensbury Drive, New Albany, Ohio, as the location to be searched.  The affidavit indicates that Alexander Edds was identified as a person of interest involving the cultivation of marijuana sometime after September 2009.  The affidavit does not state who so identified Edds.

{¶ 5}    The officer indicated that Edds was seen going into a store which sells gardening materials "on approximately two occasions."  Edds apparently bought potting soil and "other unidentified material(s)."  This apparently happened on September 21, 2009, over one year before the search.  A second trip to the garden store occurred the month before the search.  Edds carried something unknown into the store and carried something unknown out of the store.

{¶ 6}    The officer indicated "[a] records check revealed that Alexander Edds is currently using 4142 Greensbury Drive, New Albany, Ohio 43214 as his current address."  What records were checked is not indicated.  Another person owns 4142 Greensbury Drive.

{¶ 7}    In May 2011, police subpoenaed the records with American Electric Power and verified that Edds has an account for electrical service at 4142 Greensbury Drive.  His account reflects the use of more electricity at 4142 Greensbury Drive than three other houses in the neighborhood and more than prior occupants of the residence.

{¶ 8}    The officer then added:

> Information obtained from a central Ohio law enforcement agency revealed that Edds has transported marijuana [in] the 2005 Mercedes and has been observed carrying large amounts of U.S. currency on his person.
>
> A criminal history check of Alexander revealed a prior arrest for receiving stolen property, possession of criminal tools and criminal trespass by Westerville Police in 2003.

{¶ 9}    The latter paragraph could be construed as the officer trying to throw information into the search warrant affidavit which had no value to a magistrate being requested to issue a warrant.  The fact that eight years earlier Edds was charged with a theft-related crime and arrested but apparently never convicted is no indication that Edds was doing anything illegal in May 2011.

{¶ 10}   The claims that someone else in law enforcement said Edds has transported marijuana of an unknown amount in a Mercedes and was seen with large amounts of cash at some unknown time does not assist the issuing magistrate in knowing that illegal activity is currently happening at a specific location.  At its core, the affidavit indicates at most that Edds has purchased gardening supplies and has ties to a house which uses more

electricity than three other houses in the neighborhood and more electricity than was used at an earlier time at that location.

{¶ 11} The information in the affidavit does not approach the level of information required to allow police officials to enter a private residence and conduct a complete search. If there "was a substantial basis for the issuance of the search warrant" as the State now alleges, that substantial basis was not revealed in the affidavit used to obtain the warrant. The common pleas court judge who reviewed the warrant correctly saw this and granted the motion to suppress.

{¶ 12} The first assignment of error is overruled.

{¶ 13} The State of Ohio next argues that the search should have been upheld based upon the so-called good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).

{¶ 14} As a general rule, *Leon* has been applied in situations where a police officer was not aware that he or she lacked what was required to obtain a search warrant. For instance, in *Illinois v. Krull*, 480 U.S. 340 (1987), the police relied upon a statute which was later found to be unconstitutional when obtaining a warrant. In *Arizona v. Evans*, 514 U.S. 1 (1995), police relied upon an arrest warrant which turned out to no longer be valid, although electronic records indicated it was valid when the arrest was made.

{¶ 15} The officer in the search of 4142 Greensbury Drive was on notice that he did not have the incriminating information necessary to search a private residence owned by someone other than Edds. The fact Edds may have liked to garden and the fact that Edds had an account with the electric company, which indicated that the residence used more electricity than other houses in the neighborhood, was not enough to justify the intrusion which accompanies a full police search.

{¶ 16} Because the basis in fact was so lacking, the officer threw in the claims that Edds had theft-related charges filed against him eight years earlier, which led to no convictions. The officer also threw in the claim that someone in law enforcement stated Edds carried a large amount of cash on some occasion. This was not a criminal offense. The officer also threw in the claim that Edds at some time in the last six or seven years had some marijuana in a vehicle he owned, whether it was a single joint or a larger quantity was not indicated.

{¶ 17} This is simply not a situation which the officer's conduct is rescued by the good-faith exception.  The officer apparently knew he lacked probable cause to search a private residence.

{¶ 18} The second assignment of error is overruled.

{¶ 19} In the third assignment of error, the State argues that *State v. Lindway*, 131 Ohio St. 166, a 1936 case from the Supreme Court of Ohio is binding precedent that the exclusionary rule does not apply to searches and seizures found to be in violation of the Ohio Constitution.

{¶ 20} *Mapp v. Ohio*, 367 U.S. 643 (1961), was not decided until 25 years later. The exclusionary rule did not become the law of the land until then.  In intervening cases decided by the Supreme Court of Ohio, the applicability of the exclusionary rule has been assumed and applied.  *See State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, for instance.  *See also State v. Robinette*, 80 Ohio St.3d 234 (1997).  *Lindway* has been expressly overruled in the context of violations of the Fourth Amendment to the U.S. Constitution and by implication for violations of the Ohio Constitution.

{¶ 21} The third assignment of error is overruled.

{¶ 22} Turning to the fourth assignment of error, the trial court judge was premature in dismissing the charges before the State had its opportunity to pursue its direct appeal.  However, we note that, in pursuing its appeal, the State has certified that the trial court's granting of the motion to suppress has rendered the State's proof with respect to the pending charges so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.  *See* Crim.R. 12(K)(2).

{¶ 23} We also note the provision of Crim.R. 12(K) that, "[i]f an appeal from an order suppressing or excluding evidence pursuant to this division results in an affirmance of the trial court, the state shall be barred from prosecuting the defendant for the same offense or offenses except upon a showing of newly discovered evidence that the state could not, with reasonable diligence, have discovered before filing of the notice of appeal."

{¶ 24}  As a result, we sustain the fourth assignment of error and remand the case to the trial court for the State to show that it has acquired such newly discovered evidence or that the trial court was not in error dismissing the charges.

{¶ 25} In review, we overrule the first, second, and third assignments of error. We sustain the fourth assignment of error and remand the case for such further proceedings as are consistent with Crim.R. 12(K).

*Judgment affirmed in part and reversed in part; remanded for further proceedings.*

CONNOR, J., concurs.
SADLER, P.J., concurs in part and dissents in part.

SADLER, P.J., concurring in part and dissenting in part.

{¶ 26} I agree that the fourth assignment of error should be sustained because the state had an absolute right to appeal from the adverse decision rendered on the motion to suppress. *State v. Fraternal Order of Eagles Aerie 0337 Buckeye*, 58 Ohio St.3d 166, 168 (1991). Therefore, I concur in part. However, I disagree with the majority's decision to overrule the first assignment of error and to issue a remand with instructions. Therefore, I respectfully dissent in part.

{¶ 27} This case centers on the suppression of evidence, inter alia, 132 marijuana plants, scales, and incriminating statements, obtained after the execution of a search warrant. The warrant issued by the Franklin County Municipal Court was supported by the affidavit of Westerville Police Detective Russell Moore in his capacity as a Task Force Officer for the Drug Enforcement Administration ("DEA"). The majority discusses facts it finds pertinent and reproduces select portions of Detective Moore's affidavit. However, when determining the sufficiency of probable cause from an affidavit submitted to support a search warrant, the issuing judge must look to the totality of the circumstances set forth in the affidavit submitted and determine whether probable cause exists that contraband or evidence of a crime would be found in a particular place. *State v. Garner*, 74 Ohio St.3d 49, 62 (1995). By contrast, a reviewing court should not conduct a de novo review of a judge's determination of probable cause, but review the warrant to ensure that the judge had a substantial basis for concluding that probable cause existed, according "great deference to the judge's determination of the existence of probable cause." *Id.* at 62. Given the applicable standards of review, including the requirement that the issuing judge look to the totality of the circumstances presented in the affidavit, I produce Detective Moore's affidavit in its entirety.

{¶ 28} The affidavit states Detective Moore has been employed as a police officer by the city of Westerville since 1989 and is currently assigned to the DEA conducting various narcotics investigations. The affidavit states Detective Moore "has participated in numerous search warrants involving the indoor growing of marijuana." Additionally, the affidavit provides:

> In September 2009 of 2009, the DEA Columbus District Office began conducting an investigation regarding marijuana cultivation in Columbus, Ohio. During the course of this investigation Alexander Edds was identified as a person of interest involving the cultivation of marijuana. Edds has been observed on approximately two occasions at the Garden Indoors/Indoor Gardens located at 4720 Indianola Avenue in Columbus, Ohio. Garden Indoors sells plant growing material which could be utilized for the cultivation of marijuana. Edds has been observed loading what appeared to be potting soil and other unidentified material(s) into his vehicle. On both occasions Edds was accompanied by an unknown female.
>
> On September 21, 2009 DEA Special Agent (SA) Todd Yant observed a white Audi with Ohio registration EVS 3929 arrive in the parking lot of the Indoor Gardens. According to the Ohio Attorney General "OHLEG" web page, Alexander Edds, 6366 Old 3C Highway, Westerville is the owner of the Audi. On this occasion SA Yant observed Edds place potting soil and a large bag of possible chemicals into the rear of his vehicle.
>
> On April 27, 2011 SA Yant observed a 2005 silver Mercedes with Ohio registration FDB 6272 arrive in the parking lot of the Indoor Gardens. According to the Ohio Attorney General "OHLEG" web page, Alexander Edds, 6636 Old 3C Highway is the registered owner of this vehicle. SA Yant observed Edds and an unknown white female exit the vehicle and enter the store. Edds was carrying an unknown item into the store. Approximately five minutes Edds and the female exited the store. Edds was carrying an unknown item. Edds and the female he had arrived with entered the vehicle and left the area.
>
> A records check revealed that Alexander Edds is currently using 4142 Greensbury Drive, New Albany, Ohio 43214 as his current address. The Franklin County Auditors web page

found that Jeffrey Stanley is the listed owner of 4142 Greensbury Drive.

On May 3, 2011 a subpoena was issued to American Electrical Power (AEP) for electrical consumption of 4142 Greensbury Drive, New Albany, Ohio as well as three other nearby residences. AEP records indicate that Alexander Edds has active electrical service at 4142 Greensbury Drive, New Albany, Ohio since January 11, 2011. According to the AEP return of the electrical consumption subpoena showed that from February 2011 to May 3rd 2011 the address 4142 Greensbury Drive averaged 3920 kilowatt hours per month. As of May 3rd 2011 the electrical consumption of this address was 5199 kilowatt hours. A comparison of electrical consumption of similar surrounding residences showed the following:

| Date | Address | Kilowatt Hours (kwh) | Monthly Ave (Feb-May) |
| --- | --- | --- | --- |
| 05-03-2011 | 4142 Greensbury Dr. | 5199 | 3920 |
| 05-03-2011 | 4166 Greensbury Dr. | 635 | 612 |
| 05-03-2011 | 4179 Greensbury Dr. | 968 | 894 |
| 05-03-2011 | 4187 Greensbury Dr. | 329 | 374 |

Additionally, from September 2010 to December 2011 the prior occupants of 4142 Greensbury Drive, New Albany, Ohio averaged 1078 kilowatt hours per month.

Information obtained from a central Ohio law enforcement agency revealed that Edds has transported marijuana the 2005 Mercedes and has been observed carrying large amounts of U.S. currency on his person.

A criminal history check of Alexander revealed a prior arrest for receiving stolen property, possession of criminal tools and criminal trespass by Westerville Police in 2003.

(Sic passim.)

{¶ 29} From this affidavit, the issuing judge was to " 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of

the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).  A reviewing court does not conduct a de novo review of the issuing judge's determination of probable cause, but reviews the warrant "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," according "great deference to the magistrate's determination of probable cause" and resolving "doubtful or marginal cases * * * in favor of upholding the warrant."  *Id.* at paragraph two of the syllabus.

{¶ 30} Probable cause means less evidence than would justify condemnation, so that only the "probability, and not a prima facie showing, of criminal activity is the standard of probable cause."  (Internal quotations and emphasis omitted.)  *Id.* at 329.  In determining whether probable cause supports a search warrant, the issuing judge generally is confined to the averments contained in the supporting affidavit.  *State v. Yanowitz*, 67 Ohio App.2d 141, 144 (8th Dist.1980).

{¶ 31} Contrary to the majority's conclusion that this affidavit indicates "at most" that Edds has purchased gardening supplies and has ties to a house which uses more electricity than others, I believe that, based on the totality of the circumstances, this affidavit established probable cause to support the search warrant issued in this case. (Majority, ¶ 10.)

{¶ 32} The information pertaining to Edds being identified as a "person of interest involving the cultivation of marijuana" arose from an investigation conducted by the DEA Columbus District Office.  The information regarding Edds being at and carrying items out of a store called Indoor Gardens on September 21, 2009 and April 27, 2011 was provided by DEA Special Agent Todd Yant.  The information regarding Edds being observed carrying large amounts of United States currency on his person and Edds having transported marijuana in the 2005 Mercedes in which he was seen at Indoor Gardens was provided by a central Ohio law enforcement agency.[1]  The majority discounts most of this information because there are no specifics regarding the identification of the person that provided the information.  As the affidavit indicates, this information was the result of an investigation of the DEA Columbus District Office and observations of a central Ohio law enforcement agency.  In general, " 'another law enforcement officer is a reliable source

---

[1] Detective Moore's affidavit states that, on April 27, 2011, DEA Special Agent Yant observed Edds in a 2005 silver Mercedes at Indoor Gardens.  The affidavit further states that a separate law enforcement agency relayed "that Edds has transported marijuana in the 2005 Mercedes."

and . . . consequently no special showing of reliability needs to be made as a part of the probable cause determination.' "   *United States v. Lapsins*, 570 F.3d 758, 764 (6th Cir.2009), quoting 2 Wayne R. LaFave, *Search and Seizure* § 3.5(a) (4th ed.2008).

{¶ 33} Additionally, as stated in *Gates*, the observations regarding "particularized suspicion" are also applicable to the probable-cause standard:

> The process does not deal with hard certainties, but with probabilities.  Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same – and so are law enforcement officers.  Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Gates* at 231, quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981).  Detective Moore's affidavit indicates the culmination of evidence in the DEA investigation led to Edds being named a person of interest in a marijuana cultivation operation.  The affidavit also indicates another law enforcement agency in central Ohio was aware of Edds transporting marijuana in the car in which he was seen at Indoor Gardens on April 27, 2011, and the agency was also aware of Edds carrying large amounts of United States currency on his person.  While more detail could have been presented, I disagree that the lack of detail here requires a finding that the judge issuing this search warrant should have rejected all of this information.

{¶ 34} The majority also rejects the September 2009 characterization of Edds as a "person of interest" and the September 2009 trip of Edds to Indoor Gardens seemingly because said information is stale since the warrant was not sought until May 2011.  Whether information is stale depends on the inherent nature of the crime and, in the context of a search warrant, turns on several factors, such as " 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?).' "  *United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir.2003), quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir.2001).  In the context of drug crimes, information goes stale very quickly "because drugs are usually sold

and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir.2009).

{¶ 35} However, "[a] marijuana growing operation, which is a long-term operation, may allow for greater lapses of time between the information relied upon and the request for a search warrant." *United States v. Thomas*, 605 F.3d 300, 310 (6th Cir.2010), citing *United States v. Greany*, 929 F.2d 523, 525 (6th Cir.1991). Furthermore, Detective Moore's affidavit contained statements regarding an April 27, 2011 trip to Indoor Gardens in a 2005 Mercedes in which he has transported marijuana. Additionally, Detective Moore's affidavit contained February through May 2011 electricity use records from appellees' residence showing significantly higher electricity consumption than that of surrounding properties as well as the prior occupants. Information from an informant that is otherwise stale may be " 'refreshed' " if the affidavit contains " 'recent information [that] corroborates otherwise stale information.' " *Id.* at 310, quoting *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir.1998) (recent electricity use records refreshed eight-month old tip by an anonymous informant that the defendant was growing marijuana); *State v. Cook*, 5th Dist. No. 2010-CA-40, 2011-Ohio-1776, ¶ 23 (two-year old utility usage information properly relied on in marijuana grow case as staleness evaluated in light of particular facts, nature of criminal activity, and property sought); *Greany* at 525 (nearly two-year old information on marijuana growing operation upheld, staleness evaluated in light of particular facts of case, and nature of criminal activity and property sought); *State v. Hoppe*, 223 Wis.2d 799 (1998) (though over one-year old, informant's tip not stale where the agent's review of electrical consumption records supported the inference of marijuana cultivation because "[m]arijuana growing is of a continuous nature, and, therefore, greater lapses of time are justified").

{¶ 36} The majority also dismisses the information pertaining to the trips to Indoor Gardens and the electricity use records because there are a number of innocent explanations regarding each of these pieces of information. While it is legal to visit and make purchases at the business in question and there are legal explanations for sharp increases in electricity use, such is not dispositive. " '[I]nnocent behavior frequently will provide the basis for a showing of probable cause[.] . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or

"guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.' " *United States v. Hoang*, 487 Fed.Appx. 239, 244 (6th Cir.2012), quoting *Gates* at 243, fn. 13. In my view, this affidavit contains both criminal and non-criminal acts that collectively provide a degree of suspicion that satisfies the probable cause requirement for the judge to have issued this warrant.

{¶ 37} As this court has held, electrical usage data is a relevant factor in determining probable cause. *State v. Gantz*, 106 Ohio App.3d 27 (10th Dist.1995); *State v. Liebold*, 2d Dist. No. 25124, 2013-Ohio-1371; *Thomas*; *Hoang*; *State v. Waters*, 2008 Minn. App. Unpub LEXIS 711 (the association of high electricity usage with a marijuana-growing operation is not only common knowledge to law enforcement involved in such investigations but also has been recognized by courts as a fact that supports a finding of probable cause for a search warrant). *See, e.g., United States v. Olson*, 21 F.3d 847, 850 (8th Cir.1994) (affirming finding of probable cause for search "notwithstanding the lack of a basis of knowledge for the informants' information" where officers obtained records showing that defendant's electrical use was abnormally high); *Hoppe* (as a matter of common knowledge, the issuing judge could connect increased electrical consumption with the presence of special grow lights supporting a marijuana grow).

{¶ 38} The electricity use records indicate that, as of May 3, 2011, Edds' address consumed anywhere from *five to fifteen times* more electricity than that of surrounding properties. Additionally, the records indicate that the average monthly electricity consumption of Edds' address from February to May 2011 was anywhere from *four to ten times* greater than the surrounding properties during that same time frame. The affidavit also provides that the monthly average electricity use of the prior occupants at Edds' address, specifically from September to December 2011, was 1078 kilowatt hours. Thus, in the five months since Edds activated electrical service at his address, the monthly average electricity consumption was *over three times* that of the prior occupants at that same address. While I do not suggest that there are no innocent explanations for such electricity use, however, when coupled with a DEA investigation into a marijuana cultivation operation that led to Edds being named a person of interest and an additional law enforcement agency's observation that Edds has previously transported marijuana, I find the electricity use records significant.

{¶ 39} When viewed in a vacuum, each element of the affidavit is less persuasive or even insufficient by itself to support probable cause.  However, when viewed together and in its entirety, I believe the totality of the circumstances establishes a "fair probability that contraband or evidence" of marijuana possession and cultivation would be found at 4142 Greensbury Drive.  *State v. Allen*, 10th Dist. No. 08AP-264, 2008-Ohio-6916, ¶ 14, quoting *Gates* at 238 (a judge properly issues a search warrant if the totality of the circumstances establish a fair probability that contraband or evidence of a crime will be found in a particular place).  In its entirety, Detective Moore's affidavit established that in September 2009, during a DEA investigation into marijuana cultivation, Edds was named a person of interest.  Also at this time, Edds was observed entering Indoor Gardens, which, according to the affidavit, is a business that sells plant growing materials which could be utilized for the cultivation of marijuana.  Nineteen months later, Edds was observed at Indoor Gardens in the same 2005 Mercedes that, according to an additional law enforcement agency, Edds had used to transport marijuana.  Also, according to the central Ohio law enforcement agency, Edds has been observed carrying large amounts of United States currency on his person.  Lastly, electricity consumption records from 4142 Greensbury Drive indicated that, from February to May 2011, the residence had used three times the monthly electricity as the prior occupants and four to ten times the electricity as the surrounding properties in that same time frame.

{¶ 40} Any staleness in the 2009 information was refreshed by the recent 2011 information pertaining to Edds and his activities.  When considered in its totality, Detective Moore's affidavit contained information that distinguished him from one that "may have liked to garden" or an individual lawfully growing vegetation indoors and also provided a substantial basis for the issuing judge to conclude there was a fair probability that marijuana or related paraphernalia would be found at Edds' residence.  (Majority, ¶ 14.)  An affidavit is to be judged on the adequacy of what it contains, not on what it lacks or on what a critic might say should have been added.  *Thomas*; *United States v. Allen*, 211 F.3d 970, 975 (6th Cir.2000).  A reason for avoiding a "hypertechnical or rigorous standard for reviewing a search warrant is that a finding of insufficiency of an affidavit leads to suppression of evidence.  The suppression of evidence seized pursuant to a search warrant should not be treated lightly; in suppressing evidence the truth is suppressed, and

an investigation into a crime is impeded."  *United States v. Giacalone*, 541 F.2d 508, 514 (6th Cir.1975), citing *McCray v. Illinois*, 386 U.S. 300, 307 (1967).

{¶ 41} The duty of the official reviewing the warrant is to make a practical, common sense determination, based on the totality of the circumstances, regarding whether there is a fair probability that contraband or evidence of a crime will be found at a particular place.  Reviewing courts are to review the warrant " 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.' "  *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 9, quoting *George* at paragraph two of the syllabus.

{¶ 42} Undoubtedly, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," as is exemplified herein where the reviewing judge's determination of probable cause differed from that of the judge issuing the warrant.  *United States v. Leon*, 468 U.S. 897, 914 (1984).  Even if viewed as marginal or doubtful, upon thoughtful review of the affidavit, the law concerning probable cause and the issuance of search warrants thereon, I do not conclude this affidavit is so lacking such that deference should not be accorded to the issuing judge's determination of probable cause or that this case should not be resolved in favor of upholding the warrant. A probable cause determination only depends on the fair probability of criminal activity, not a prima facie demonstration of criminal activity.  *Allen* at ¶ 28.

{¶ 43} For all these reasons, I conclude Detective Moore's affidavit established probable cause to support the search warrant issued for 4142 Greensbury Drive. Therefore, I conclude the trial court erred in suppressing the 132 marijuana plants and other evidence obtained as a result of that search and would sustain appellant's first assignment of error.

{¶ 44} Because I would sustain appellant's first and fourth assignments of error, appellant's second and third assignments of error would be rendered moot and I would not address the same.  Accordingly, I respectfully concur in part and dissent in part.

_____