[Cite as *State v. Henderson*, 2019-Ohio-1974.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 28880 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| NATHAN L. HENDERSON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2017-02-0675-B |

DECISION AND JOURNAL ENTRY

Dated: May 22, 2019

TEODOSIO, Presiding Judge.

{¶1} Appellant, Nathan L. Henderson, appeals from his conviction for illegal cultivation of marijuana in the Summit County Court of Common Pleas. This Court reverses and remands.

I.

{¶2} According to Detective Daniel Quior of both the Cuyahoga Falls Police Department and the Summit County Drug Unit, he received information that Mr. Henderson drove a red minivan and was cultivating marijuana at 1262 Welsh Avenue. The detective commenced an investigation, conducted surveillance of the residence, and twice saw Mr. Henderson there: once as he arrived in a red minivan and entered the house without knocking, and once in the back driveway area of the residence. He investigated Mr. Henderson's criminal history and discovered two arrests for trafficking drugs—one for marijuana and one for

cocaine—as well as convictions for drug possession. He also observed that no trash was ever placed out front for pickup, which he testified is an indicator of a marijuana grow operation.

{¶3} According to the detective, based on his training and experience, indoor marijuana grow operations require a high level of electricity, so he subpoenaed the electricity-usage records from 1262 Welsh Avenue as well as three comparable houses in the area. He reviewed the month-to-month data over a one-year period. He was looking for a "spike" in kilowatts per hour ("KPH") because marijuana grows occur in periods, including "down periods" for harvesting. The detective saw that electricity usage at 1262 Welsh Avenue spiked to an "extremely high" number in May of 2016. To him, it did not indicate air conditioners or space heaters, but a much higher power consumption instead. Detective Quior then secured a search warrant for thermal imaging of the residence. He accompanied two pilots and Detective Jerry Antonucci of the Ohio State Highway Patrol Aviation Unit in a helicopter for a thermal flyover of 1262 Welsh Avenue and the surrounding neighborhood. Detective Quior then secured a search warrant for the residence located at 1262 Welsh Avenue. A search of the residence revealed a marijuana grow operation in the basement.

{¶4} Mr. Henderson and his co-defendant ("S.H.-H.") were both charged with illegal cultivation of marijuana, a felony of the second degree, and possession of marijuana, a felony of the third degree. S.H.-H. was also charged with aggravated possession of drugs, a felony of the fifth degree.

{¶5} Mr. Henderson and S.H.-H. filed a joint motion to suppress, which the trial court denied following a hearing. Mr. Henderson then pled no contest to an amended charge of illegal cultivation of marijuana, a felony of the third degree, and the remaining charge was dismissed. The trial court found him guilty and sentenced him to 24 months of community control.

**{¶6}** Mr. Henderson now appeals from his conviction and raises one assignment of error for this Court's review.

## II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN HOLDING, BASED ON THE TOTALITY OF THE CIRCUMSTANCES, THERE WAS PROBABLE CAUSE FOR ISSUANCE OF THE SEARCH WARRANT FOR APPELLANT'S RESIDENCE

**{¶7}** Mr. Henderson makes a multitude of arguments under his assignment of error. He argues that the trial court erred in denying his motion to suppress because: (1) Detective Quior impermissibly drew an inference in his search-warrant affidavit for thermal imaging—by averring that the electricity usage at 1262 Welsh Avenue was "significantly higher" than comparable properties—thus usurping the signing judge's authority to draw such inferences; (2) Detective Quior misrepresented the source of his information as being anonymous when the source was actually a known informant; (3) the thermal imaging search-warrant affidavit did not establish probable cause, and the information provided by the informant should have been reviewed under the standard for anonymous sources; (4) Detective Quior impermissibly drew a false inference in his affidavit supporting a search of the house at 1262 Welsh Avenue by inaccurately stating that the thermal imaging scan "revealed a strong heat signature emitting from the basement area of the address that was not consistent with the surrounding houses"; and (5) the search-warrant affidavit for the house did not establish probable cause.

**{¶8}** Mr. Henderson's stated assignment of error initially gives us pause as it only challenges the determination that sufficient probable cause existed for the second search warrant—for a search of the residence at 1262 Welsh Avenue—but it does not state with specificity any alleged errors regarding the thermal imaging search warrant or its supporting

affidavit, the classification of the informant as anonymous or known, or any impermissible inferences made by the detective in either affidavit. This Court has consistently held that an appellant's captioned assignment of error provides us with a roadmap on appeal and directs our analysis. *E.g., State v. Martynowski*, 9th Dist. Lorain No. 17CA011078, 2017-Ohio-9299, ¶ 18. Consequently, "[t]his Court will not address arguments that fall outside the scope of an appellant's captioned assignment of error." *Id.* While we could conceivably decline to address several of Mr. Henderson's arguments on this basis alone—save his ultimate challenge to the determination of sufficient probable cause for the warrant to search the house—we will instead liberally construe his statement referencing the "totality of the circumstances" as challenging the probable cause for the warrant to search the house as well as incorporating his additional arguments as to the thermal imaging search warrant and affidavit, as the results of the thermal imaging scan were referenced in the affidavit supporting the warrant to search the house.

{¶9} Mr. Henderson pled no contest in this case, and a plea of no contest does not preclude a defendant from asserting on appeal that the trial court erred in ruling on a pretrial motion to suppress evidence. Crim.R. 12(I). The appropriate standard of review is as follows:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

### "Significantly Higher" Electricity Usage

{¶10} Mr. Henderson argues that Detective Quior, by concluding in his thermal imaging search-warrant affidavit that the electricity usage at 1262 Welsh Avenue was "significantly

higher" than at comparable properties, usurped the issuing judge's authority to draw such inferences.

{¶11} "[A]ffiants may make reasonable inferences within search-warrant affidavits." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 39. However, to permit an independent review, the facts upon which those inferences are based must be disclosed and the issuing judge must be afforded the opportunity to test any significant inferences drawn by the affiant. *Id.* at ¶ 40. The issuing judge cannot be viewed as neutral and detached if she issues a search warrant that is unknowingly based on the police officer's conclusions. *Id.* at ¶ 41. While search-warrant affidavits will inevitably include undisclosed inferences, there is a line between permissible police interpretation and usurpation of the judge's function. *Id.* at ¶ 49.

{¶12} In *Castagnola*, the Supreme Court of Ohio adopted the test outlined in *People v. Caffott* for reviewing courts confronted with allegations that an inference made by an affiant was presented as an empirical fact in an affidavit, thus usurping the issuing judge's inference-drawing authority. *Id.* *See also People v. Caffott*, 105 Cal.App.3d 775 (Cal.App.1980). Where an undisclosed inference is made in an affidavit, the reviewing court should:

> [D]etermine whether the hidden inference was so significant as to cross the line between permissible interpretation and usurpation. * * * A hidden inference should be deemed significant if it can be fairly concluded that it had a substantial bearing on the [issuing judge's] determination of probable cause in each of two respects:
>
> (1) *Relevance*: The more directly relevant the inference is to the [issuing judge's] inquiry, the more substantial its bearing and the more significant it will be. * * *
>
> (2) *Complexity*: The more complex and attenuated the logical process by which a relevant conclusion is reached, the more important it is that the [issuing judge] receive an opportunity to test the inference for validity as part of [her] neutral and detached function. Conversely, an inference so straightforward, and so patently within the affiant's area of expertise, as to be a matter of "routine interpretation" for the affiant is probably not so significant as to require the [issuing judge's] review even though the conclusion thus reached is highly relevant.

*Id.*, quoting *Caffott* at 783. If the inference is significant, then the reviewing court should examine the affiant's animus. *Id.* at ¶ 50. "If the affiant acted intentionally or with conscious indifference, then the warrant should be invalidated and the evidence suppressed." *Id.* "However, if the affiant acted negligently, then the misstatement should be removed, the omitted underlying facts added, and the affidavit reassessed." *Id.*

{¶13} In the case sub judice, the thermal imaging search-warrant affidavit includes the following statement:

> AFFIANT knows from obtaining First Energy power consumption records by subpoena on January 19[], 2017[,] that the electrical power consumption at 1262 Welsh Avenue, Akron[,] Ohio is *significantly higher* than that of similar[-]sized residences by comparing the consumption.

(Emphasis added.). No additional information or data regarding the properties or their electricity usage is included within the affidavit.

{¶14} When first considering the relevance of the detective's conclusion that the electricity usage at 1262 Welsh Avenue was "significantly higher" than at comparable properties, we note that courts have generally determined electricity usage to be relevant in determining probable cause. *See State v. Stock*, 8th Dist. Cuyahoga No. 105996, 2018-Ohio-3496, ¶ 31; *State v. Adkins*, 12th Dist. Butler Nos. CA2014-02-036 and CA2014-06-141, 2015-Ohio-1698, ¶ 67; *State v. Kosla*, 10th Dist. Franklin Nos. 13AP-514, 13AP-517, 13AP-515, and 13AP-516, 2014-Ohio-1381, ¶ 37; *State v. Leibold*, 2d Dist. Montgomery No. 25124, 2013-Ohio-1371, ¶ 24. We agree with our sister district courts and conclude that Detective Quior's inference was relevant to the determination of probable cause.

{¶15} We must next consider the complexity of the logical process by which Detective Quior's conclusion was reached. The detective reviewed and compared the month-to-month

electricity-usage data from 1262 Welsh Avenue and three comparable houses in the area over a one-year period. He testified at the suppression hearing that he was looking for a "spike" in KPH because marijuana grows occur in periods, including "down periods" for harvesting. The affidavit includes Detective Quior's knowledge, training, and experience in recognizing the various indicators of indoor marijuana grow operations, including higher electricity usage resulting from the use of grow lights, power supply transformers, and ventilation equipment. Under the facts of this particular case, and in consideration of Detective Quior's knowledge, training, and experience with drug-related investigations, as well as the simplistic nature of comparing numbers to determine if any are much higher than others, we conclude that his "significantly higher" conclusion was so straightforward, and so patently within his area of expertise, as to be a matter of "routine interpretation" for him. *See Castagnola* at ¶ 49. The detective's review and comparison of the data was not so complex and attenuated as to require some type of additional, comprehensive investigation.

{¶16} Thus, even though Detective Quior's "significantly higher" conclusion is certainly relevant to the determination of probable cause, it is not so significant as to require the issuing judge's review of the actual, underlying electricity-usage data. *See id*. We therefore need not examine the detective's animus and, accordingly, conclude that the inference was reasonable under the circumstances and did not cross line between permissible police interpretation and usurpation of the issuing judge's function.

Veracity of the Thermal Imaging Search-Warrant Affidavit

{¶17} Mr. Henderson also challenges the veracity of the thermal imaging search-warrant affidavit by arguing that Detective Quior misrepresented the source of information as being anonymous when the source was actually a known informant.

{¶18} While Mr. Henderson's argument initially challenges the thermal imaging search-warrant affidavit, it oddly concludes with a sentence challenging the "issuance of the subpoena to Ohio Edison for electric usage data and comparison." However, the electricity-usage data was subpoenaed prior to the detective's preparation of the thermal imaging search-warrant affidavit and is referenced within that document. Moreover, "individuals do not have a reasonable expectation of privacy in their electricity usage records, and * * * the police do not need probable cause in order to obtain the records." *Leibold*, 2013-Ohio-1371, at ¶ 38, citing *State v. Coleman*, 2d Dist. Montgomery No. 25248, 2012-Ohio-6042, ¶ 24, citing *United States v. McIntyre*, 646 F.3d 1107 (8th Cir.2011). *See also United States v. Thomas*, 662 Fed.Appx. 391, 397 (6th Cir.2016) ("As with banking and phone records, there is no Fourth Amendment privacy interest in the number of kilowatt hours one uses"). We thus presume Mr. Henderson's challenge to the subpoena for electricity-usage data at the conclusion of his argument was a typographical error, and we will address his argument only as it applies to the thermal imaging search-warrant affidavit.

{¶19} We respectfully disagree with the dissent's suggestion that Mr. Henderson's argument regarding the anonymity of the tip only challenged the sufficiency of the subpoena of electricity-usage data, and that this Court is now sua sponte raising the argument as it relates to the thermal imaging search-warrant affidavit. Although Mr. Henderson challenged the subpoena of electricity-usage data in his motion to suppress, at the suppression hearing he further challenged the anonymity of the tip as it related to the search-warrant affidavits. He has since narrowed down his arguments on appeal and focused on the search warrants and their supporting affidavits. In his merit brief, he first challenges the "affidavit in support of a warrant to conduct a thermal imaging scan" and specifically states, "Det. Quior clearly misrepresented the nature of

the information source in his *warrant affidavit* * * *." (Emphasis added.). Thus, his later reference to the subpoena for electricity-usage data in that same section appears to have been made by mistake, presumably because a few paragraphs of his motion to suppress have been copied word for word and now appear in his appellate brief. When his argument on appeal is read as a whole, however, the fact that he is challenging the anonymity of the tip as it relates to the search-warrant affidavits, and not the electricity-usage subpoena, becomes clear.

{¶20} Affidavits supporting search warrants enjoy a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). In order to successfully challenge the veracity of a search-warrant affidavit, "a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.'" *State v. Perry*, 9th Dist. Lorain No. 15CA010889, 2017-Ohio-1185, ¶ 12, quoting *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 31, quoting *State v. Waddy*, 63 Ohio St.3d 424, 441 (1992), quoting *Franks* at 155-156. "The term 'reckless disregard' means that 'the affiant had serious doubts about the truth of an allegation.'" *Id.*, quoting *McKnight* at ¶ 31, quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984).

{¶21} Here, the thermal imaging search-warrant affidavit plainly refers to an "anonymous complaint" regarding alleged marijuana cultivation at 1262 Welsh Avenue. During his testimony at the suppression hearing, Detective Quior clarified the reason he listed the source as anonymous. He testified that the source of information was a known informant he had previously used in Cuyahoga Falls who "wish[ed] to remain anonymous."

{¶22} Although labeling a known informant as anonymous in an affidavit supporting a search warrant is an ill-advised practice, Mr. Henderson still bears the burden of showing not only that the statement is false, but also that it was made intentionally or with a reckless

disregard for the truth. *See Perry* at ¶ 12. A review of the record reveals no evidence that Detective Quior misidentified the nature of the source intentionally or with a reckless disregard for the truth. Instead, his testimony demonstrated that he actually believed "anonymous" was a true and accurate classification of the informant. There is no indication that the detective was being intentionally deceptive or reckless when listing the informant as anonymous. Under these facts, we cannot say that the detective intentionally made a false statement that undermined the veracity of the search-warrant affidavit.

{¶23} Regardless, we fail to see how Mr. Henderson suffered any prejudice here, since, under Ohio law, anonymous informants are less reliable than known informants. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 300-301 (1999) (discussing informant reliability). In other words, identifying the source as a known informant would have strengthened the detective's search-warrant affidavit, and any error in listing the source as anonymous would have benefited Mr. Henderson, not the State. As we will address in detail below, Mr. Henderson acknowledges that benefit as he argues the trial court erred by reviewing the information under the standard for known informants, rather than the standard for anonymous informants. Therefore, we find no merit in Mr. Henderson's challenge to the veracity of the search-warrant affidavit for thermal imaging.

Validity of the Thermal Imaging Search-Warrant and Supporting Affidavit

{¶24} Mr. Henderson also challenges the validity of the thermal imaging search-warrant by arguing that the trial court erred in reviewing the information received from Detective Quior's source under the standard for known informants, rather than under the appropriate standard for anonymous sources.

11

**{¶25}** "Courts have generally recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 36, citing *Maumee* at 300. "A tip from an anonymous informant, standing alone, is generally insufficient to support reasonable suspicion of criminal activity, because it lacks the necessary indicia of reliability." *Id.* Anonymous tips require suitable corroboration demonstrating sufficient indicia of reliability to provide reasonable suspicion because, unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. *Id.*

**{¶26}** As stated above, Detective Quior listed his source as being anonymous in the thermal imaging search-warrant affidavit, but later testified at the suppression hearing that the source was actually a known informant. In its order denying the motion to suppress, the trial court characterized the discrepancy between the detective's testimony and the language utilized in the affidavit as being "simply a semantical error" and "simply an oversight[,]" and ultimately upheld the thermal imaging search warrant as being supported by sufficient facts to support a finding of probable cause.

**{¶27}** We recognize that search-warrant affidavits "are normally drafted by non[-]lawyers in the midst and haste of a criminal investigation" and therefore "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). Although true that the detective's affidavit "should not be judged as an entry in an essay contest," it nonetheless "must be judged by the facts it contains." *United States v. Harris*, 403 U.S. 573, 579 (1971). "It is elementary that in passing on the

validity of a warrant, the reviewing court may consider *only* information brought to the [issuing judge's] attention." (Emphasis sic.) *Aguilar v. Texas*, 378 U.S. 108, 109 (1964), fn. 1.

{¶28} Here, the source is described in the affidavit simply as an "anonymous complaint" and no additional information is included to clarify that the source is actually a known informant who wishes to remain anonymous. There is also no evidence of any oral testimony that was presented to the issuing judge in conjunction with the affidavit. Moreover, at the time the search warrant was signed, the issuing judge was certainly not privy to the detective's future suppression hearing testimony clarifying his reasoning and decision to list the source as anonymous in the affidavit. The only information before the issuing judge was that the source was anonymous, so the information must be reviewed under the standard for anonymous sources. Once again, anonymous sources require suitable corroboration demonstrating sufficient indicia of reliability to provide reasonable suspicion. *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, at ¶ 36.

{¶29} We next turn to the probable cause determination for the search warrant for thermal imaging. "To determine if an affidavit in support of a search is supported by probable cause, a judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Myers*, 9th Dist. Summit No. 27576, 2015-Ohio-2135, ¶ 10, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). "Courts should give 'great deference' to the determination of probable cause made by the judge or magistrate who issued the search warrant." *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 16, quoting *Myers* at ¶ 10. The applicable standard of review is as follows:

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, * * * doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Myers* at ¶ 10, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus.

{¶30} "'Probable cause means the existence of evidence, less than the evidence that would justify condemnation, such as proof beyond a reasonable doubt or by a preponderance; in other words, probable cause is the existence of circumstances that warrant suspicion.'" *State v. Tejada*, 9th Dist. Summit No. 20947, 2002-Ohio-5777, ¶ 8, quoting *State v. Young*, 146 Ohio App.3d 245, 254 (11th Dist.2001). "Under that definition, while a prima facie showing of criminal activity is not required, we must instead look for the probability of criminal activity." *Jackson* at ¶ 17, citing *Myers* at ¶ 11. "When conducting a review of the probable cause behind a search warrant, we are mindful that we are 'limited to the four corners of the search warrant affidavit.'" *Jackson* at ¶ 17, quoting *Myers* at ¶ 11, quoting *State v. Russell*, 9th Dist. Summit No. 26819, 2013-Ohio-4895, ¶ 9.

{¶31} The thermal imaging search-warrant affidavit sets forth a number of facts, including: (1) An "anonymous complaint" was received regarding marijuana cultivation at 1262 Welsh Avenue; (2) subpoenaed electricity-usage records show that power consumption at 1262 Welsh Avenue is significantly higher than at comparable residences; (3) indoor marijuana grow operations—based on the affiant's knowledge, training, and experience—produce an elevated amount of heat commonly radiated from within the structure that is measurable and documentable by those trained and certified in the use of thermal imaging equipment; (4) the

Ohio State Highway Patrol Aviation Section is trained and certified in the use of thermal imaging equipment during flyovers, and a video will be recorded and produced; and (5) there is reason—based on the affiant's knowledge, training, and experience—to conduct a thermal imaging flyover of the residence to further the investigation and protect the public. The trial court found that the search warrant for thermal imaging was supported by sufficient facts to establish probable cause.

{¶32} In properly limiting our review to the four corners of the affidavit, we determine that the issuing judge did not have a substantial basis for concluding that probable cause existed to issue a search warrant for thermal imaging in this case. The affidavit contains nothing to connect any possible criminal activity to the residence or anyone within it, only providing an anonymous source's conclusion that 1262 Welsh Avenue contains an indoor marijuana grow operation. Wholly conclusory statements do not provide an issuing judge with a substantial basis for determining the existence of probable cause, and instead "provid[e] virtually no basis at all for making a judgment regarding probable cause." *Gates*, 462 U.S. at 239. Sufficient information must be presented to the issuing judge to allow her to determine probable cause, and her action cannot be a mere ratification of the bare conclusions of others. *Id.* The affidavit here is devoid of any information regarding the informant's veracity, reliability, or basis of knowledge. *See id.* at 230 (stating an informant's veracity, reliability, and basis of knowledge are all highly relevant in determining probable cause). *See also State v. Richardson*, 9th Dist. Summit No. 24636, 2009-Ohio-5678, ¶ 13-15. Nothing in the affidavit identifies who is allegedly cultivating marijuana in the house or indicates if that person has a criminal record. Moreover, even when considering the allegation of electricity usage as significantly higher at 1262 Welsh Avenue than at some comparable properties, no reference to any additional,

independent police corroboration of the anonymous tip is included in the affidavit. *See Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, at ¶ 36 (stating anonymous sources require suitable corroboration demonstrating sufficient indicia of reliability to provide reasonable suspicion). A conclusory, uncorroborated statement from an anonymous source whose veracity, reliability, and basis of knowledge are completely unknown, combined with a statement about high electricity-usage at the house, without more, cannot provide a judge with a substantial basis for concluding that probable cause existed to issue a search warrant. *See Leibold*, 2013-Ohio-1371, at ¶ 33 ("We hesitate to approve scenarios which would permit police to obtain a warrant based solely on (legally) random inspection of electricity usage records, even for a residence which had been the subject of a prior search.").

**{¶33}** Therefore, even while giving great deference to the issuing judge's determination of probable cause, and while recognizing that doubtful or marginal cases should be resolved in favor of upholding the warrant, we can only conclude that this particular "bare bones" affidavit supporting the search warrant for thermal imaging does not include sufficient information to support a determination that probable cause existed.

**{¶34}** Our determination that the thermal imaging search-warrant affidavit was insufficient to establish probable cause leads us to next determine whether the evidence obtained during execution of the thermal imaging search warrant still should not have been suppressed under the "good faith exception" established in *United States v. Leon*, 468 U.S. 897 (1984).

> Pursuant to *Leon's* "good faith exception," evidence seized under the authority of a warrant that a court later finds was not supported by probable cause will not be suppressed if it can be demonstrated that the officer reasonably relied on the decision of a detached and neutral magistrate. *Id.* at 920-922. "At the heart of the 'good faith[] exception['] is the fact that the mistake that invalidated the warrant was solely on the part of the judge who issued the warrant. The police officers, on the other hand, merely executed a warrant they thought was valid. The rationale for not excluding evidence seized in such a situation focuses on the

inability of the exclusionary rule to fulfill its purpose of deterring police negligence and misconduct." *State v. Simon*, 119 Ohio App.3d 484, 487 (1997). However, suppression will still be the appropriate remedy if the affidavit presented to the signing judge in support of the warrant is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *George*, 45 Ohio St.3d at 331, quoting *Leon*, 468 U.S. at 923.

*Richardson* at ¶ 17.

{¶35} As discussed above, Detective Quior's affidavit failed to contain sufficient facts for the issuing judge to conclude that probable cause existed to conduct a thermal imaging scan of 1262 Welsh Avenue. Due to the wide array of pertinent information that is simply not included or not addressed in the affidavit, we can only conclude that the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and the good faith exception to the exclusionary rule is therefore inapplicable. *See id.*

{¶36} Accordingly, because the trial court's findings of fact are not supported by competent, credible evidence, we conclude that the trial court erred in upholding the thermal imaging search warrant and erred in not suppressing the evidence obtained from the thermal imaging scan of 1262 Welsh Avenue and the surrounding neighborhood.

### "Strong Heat Signature"

{¶37} Mr. Henderson next argues that Detective Quior, by concluding in his affidavit supporting the warrant to search the house that the prior thermal imaging scan revealed a "strong heat signature" emitting from the basement, usurped the issuing judge's authority to draw such inferences.

{¶38} Because we have already concluded above that the trial court should have suppressed any evidence obtained from the thermal imaging scan, we need not address any further challenges to that evidence, as they have been rendered moot.

<u>Validity of the Search Warrant for the Residence and Supporting Affidavit</u>

**{¶39}** Mr. Henderson next argues that Detective Quior's affidavit supporting the warrant to search 1262 Welsh Avenue did not establish sufficient probable cause.

**{¶40}** Once again, the applicable standard of review is as follows:

> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, * * * doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Myers*, 2015-Ohio-2135, at ¶ 10, quoting *George*, 45 Ohio St.3d 325, at paragraph two of the syllabus.

**{¶41}** The affidavit supporting the warrant to search the residence at 1262 Welsh Avenue sets forth Detective Quior's knowledge training, and experience as well as a litany of facts, including: (1) Detective Quior and the Summit County Drug Unit have been investigating Mr. Henderson and others for the illegal cultivation of marijuana in Akron, Ohio, for several months; (2) Mr. Henderson is a white male, 5'10" tall, weighing 195 pounds, and primarily resides at 1262 Welsh Avenue; (3) on approximately January 10, 2017, anonymous information was received that Mr. Henderson was involved in the illegal cultivation of marijuana and has been growing several different strands of marijuana in his basement for a long period of time; (4) the anonymous informant also stated that a red and blue minivan is always in the driveway, and records show that Mr. Henderson has a red Ford van registered to him; (5) Detective Quior conducted surveillance and positively identified Mr. Henderson in the front yard of the address; (6) electricity-usage data for 1262 Welsh Avenue and three comparable houses—a summary of

which is included in the affidavit—was subpoenaed on January 19, 2017, and the data shows 1262 Welsh Avenue consuming a "considerably higher" amount of electricity than the next highest house; (7) the electric bill for the house is in the name of another man ("G.B.") who rents the house; (8) Detective Quior knows through his training and experience that individuals who cultivate marijuana consume much higher amounts of energy due to the use of certain necessary components, including special lighting, irrigation systems, and ballast systems; (9) on January 23, 2017, police secured a search warrant for thermal imaging, which was executed and "revealed a strong heat signature emitting from the basement area of the address that was not consistent with surrounding houses"; (10) Detective Quior knows through his training and experience that extreme lighting is needed for the cultivation of marijuana, causing a much higher heat signature in the house. The trial court found that "the totality of the circumstances— i.e. the tip from a confidential source, the utility bills, and [Detective] Quior's observations of activity at the property—provide probable cause for the issuance of a search warrant for the Welsh Avenue property."

{¶42} As discussed above, the evidence obtained from the thermal imaging scan should have been suppressed, so any reference to the results of the scan must be therefore stricken from this affidavit as well. When a trial court determines that a portion of the affidavit supporting a search warrant must be stricken, the question becomes whether the remaining averments in the affidavit "provided a substantial basis for the judge to conclude that there was 'a fair probability that contraband or evidence of a crime [would] be found [in a particular place.]'" *State v. Perry*, 9th Dist. Lorain No. 15CA010889, 2017-Ohio-1185, ¶ 12, quoting *State v. Jackson*, 9th Dist. Lorain No. 14CA010593, 2015-Ohio-3520, ¶ 32, quoting *State v. Stull*, 9th Dist. Summit No.

27036, 2014-Ohio-1336, ¶ 14, quoting *George*, 45 Ohio St.3d 325, at paragraph one of the syllabus.

**{¶43}** With no evidence of any oral testimony presented to the issuing judge in conjunction with the affidavit, we are once again limited to the four corners of the affidavit in our review. *See Castagnola*, 145 Ohio St.3d at 25. Although Detective Quior testified at the suppression hearing as to some additional information such as his investigation into Mr. Henderson's criminal background, his surveillance of the residence revealing that the trash was never put out front, and the fact that he actually knew the informant and had used him in the past, none of that information was included in the affidavit supporting the warrant to search the house.

**{¶44}** The affidavit vaguely references the police "investigating" Mr. Henderson for marijuana cultivation, but provides no details regarding the investigation and reveals no information corroborating the anonymous tip that alleged illegal activity is occurring within the residence. It refers to the anonymous tip, but does not address the tipster's veracity, reliability, or basis of knowledge. *See Gates*, 462 U.S. at 239. It simply provides a physical description of Mr. Henderson and states that Detective Quior personally observed his presence one time in the front yard of the residence. It describes a vehicle registered to Mr. Henderson and references the anonymous tip that the same color and type of vehicle can be seen in the driveway of the residence, but it provides no information supporting the informant's assertion of any illegality as being reliable. "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). With anonymous tips, there must be some indicia of reliability as to the assertion of illegality, not just

its tendency to identify a specific person. *State v. Cunningham*, 9th Dist. Summit No. 26744, 2014-Ohio-1924, ¶ 7, citing *J.L.* at 272.

**{¶45}** At best, one can ascertain from this affidavit what Mr. Henderson looks like, where he lives, what vehicle he drives, the name of the man renting the house, and how much electricity the house has used in the past year. Therefore, even while giving great deference to the issuing judge's determination of probable cause, and while recognizing that doubtful or marginal cases should be resolved in favor of upholding the warrant, we are once again constrained to conclude that this "bare bones" affidavit supporting the warrant to search the residence at 1262 Welsh Avenue does not include enough information to support a determination that probable cause existed. Moreover, we again conclude that the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, therefore rendering the good faith exception to the exclusionary rule inapplicable. *See George*, 45 Ohio St.3d at 331, citing *Leon*, 468 U.S. at 923.

**{¶46}** Because the trial court's findings of fact are not supported by competent, credible evidence, we must conclude that the trial court erred in upholding the search warrant for the residence at 1262 Welsh Avenue and, thus, erred in not suppressing the evidence obtained from a search of that residence.

**{¶47}** We recognize that an illegal marijuana grow operation was indeed ultimately discovered in Mr. Henderson's basement, but we simply cannot ignore the fatal deficiencies permeating the two search-warrant affidavits presented to the issuing judge in this case. "There is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation." *State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, ¶ 24.

**{¶48}** Mr. Henderson's sole assignment of error is sustained.

## III.

**{¶49}** Mr. Henderson's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶50}  I respectfully dissent from the judgment of the majority, as I would affirm the trial court's judgment based on the limited arguments made on appeal. Henderson's challenge on appeal with respect to the anonymous tip does not relate to the sufficiency of the warrant for thermal imaging.  Instead, in his brief, he states the facts "are insufficient to support a reasonable suspicion of criminal activity warranting the issuance of the subpoena to Ohio Edison for electric usage data and comparison."  The majority views this as a typographical error and proceeds to analyze the sufficiency of the warrant for the thermal imaging search and considers the nature of the tip in so doing.  Notably, Henderson's motion to suppress repeated the same allegation contained in his brief, and, even the trial court's judgment entry states that Henderson's first argument was a challenge to "the sufficiency of the subpoena * * * for the electricity usage date because it was based on information received from an anonymous tip."  Accordingly, I cannot say that Henderson's statement in his brief was a typographical error.  As I cannot say that Henderson has adequately challenged the issue that the majority has raised and found to be reversible error, I respectfully dissent.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.